**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HASSAN SIDIBEH,**

  **Petitioner,**

  **v.**

**TIM BUCHANAN, WARDEN,**

  **Respondent.**

        **CASE NO. 2:12-CV-558
        JUDGE GRAHAM
        MAGISTRATE JUDGE KING**

**<u>REPORT AND RECOMMENDATION</u>**

  Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, Doc. No. 2, Respondent's *Motion to Dismiss*, Doc. No. 6, Petitioner's *Response in Opposition*, Doc. No. 13, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 6, be **GRANTED**, and that this action be **DISMISSED** without prejudice as unexhausted.

**FACTS and PROCEDURAL HISTORY**

  The Ohio Tenth Appellate Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was indicted on one count of aggravated burglary, four counts of aggravated robbery, four counts of kidnapping,and eight counts of robbery, with each count containing a firearm specification. The charges stem from appellant's participation in an October 2008 home invasion with Kacey Brown and Robert Vann. The incident occurred at the home of Paris Carter and her three children, Raheem, Raven, and Rhea. Appellant, a juvenile, was indicted for the incident after the juvenile court bound him over to be tried as an adult under the trial court's jurisdiction. Appellant pleaded not guilty to the charges in the indictment, and a jury trial ensued.

1

At the beginning of trial, the court instructed the jury that the parties' opening statements were not evidence and that the jury could not base its verdict on the opening statements. During opening statements, defense counsel contended that only one of the home-invasion victims identified appellant as a perpetrator.

Next, the trial court admitted into evidence Raheem's testimony from appellant's bindover hearing. Raheem was unavailable to testify at trial because he had died in an incident unrelated to the home invasion. At the bindover hearing, Raheem had testified that appellant, Brown, and Vann committed the home invasion around 10:45 p.m. He recognized appellant when the incident occurred, and during the bindover hearing, he identified appellant as a participant of the home invasion. Appellant's defense counsel, who was different from the one at trial, cross-examined Raheem. During cross-examination, Raheem testified that he had seen a photograph of appellant on a social-networking website before the home invasion. He said that he had not seen appellant "in person" before the incident, however.

At trial, Paris testified as follows about the home invasion. Around 9:30 or 10:00 p.m. on October 12, 2008, Rhea said that someone was at the door. Paris looked through a peephole of the door and saw a boy, whom she identified in court as appellant. She also saw another boy, wearing glasses, standing at the corner of her porch. She opened the door slightly, and appellant asked for Raheem. Although Raheem told Paris that he did not know who was at the door, he opened the door, and appellant barged in, brandishing a gun, followed by the boy with glasses and another boy with a blue bandana around his face. Appellant forced Paris, Rhea, and Raheem to lie down in the hallway. Raven was hiding in another room at the time.

Appellant stayed with Paris and her children while the other boys rummaged through the house. Paris asked to hold Rhea, who was crying, but appellant said no. He added, "As long as you all cooperate, we'll cooperate." Meanwhile, the boy with the bandana found Raven and told her to stay with the rest of her family. Eventually, after being in the house for five or ten minutes, the boys left with a video-game system and television.

During Paris's direct examination, the prosecutor produced a photo array from which the witness had previously identified appellant, and Paris confirmed in her testimony that she made the prior identification. Defense counsel objected and requested a mistrial because the photo array had not been disclosed during discovery. Defense counsel claimed that the discovery violation was prejudicial because, had he known about the photo array, he would not have argued during

opening statements that only one of the home-invasion victims, i.e., Raheem, could identify appellant as a perpetrator. The trial court denied the motion for a mistrial but instructed the jury to disregard the photo array and testimony about it. The court told the jury, however, that its instruction did not pertain to Paris's in-court identification of appellant, although defense counsel also objected to that identification. In addition, the court continued the trial until the next day to give appellant time to reorganize his defense.

After the trial resumed, defense counsel cross-examined Paris, when she admitted seeing appellant before in juvenile court. She also testified about a photograph of appellant, his brother, and Brown. Paris recognized appellant in the photograph, and she said that her daughter showed her that photograph from a social-networking website. Defense counsel asked whether Paris saw that photograph on October 13, 2008, after the home invasion, and Paris said she was not sure.

Vann testified as follows on direct examination. During the October 2008 home invasion, he and Brown stole a television and video-game system while appellant, brandishing a gun, restrained the victims. Vann originally faced 20 years imprisonment for his involvement in the home invasion. He entered into a plea bargain with the prosecution, however, in which he was sentenced to a total of four years' imprisonment in exchange for testifying against appellant. Next, Vann testified that he was previously in a gang but not when the home invasion occurred.

On cross-examination, Vann repeated his testimony about his favorable plea bargain, noting that he was originally charged with 17 counts but pursuant to his plea bargain, he was convicted on only four of them. He also reiterated that he was previously in a gang.

Brown confirmed during his testimony that he committed the home invasion with Vann and appellant. On direct examination, the prosecutor asked Brown about the photograph identified by Paris. Brown acknowledged that he and appellant were in the photograph and that they had blue bandanas. Brown noted that blue is the color associated with a gang he used to be in, and he said that appellant was making a gang sign with his hand.

On cross-examination, Brown testified that he and appellant used to be in a gang together, but he claimed the home invasion was not gang-related. Next, Brown said that he entered into a plea bargain with the prosecution, in which he received a sentence of five years' imprisonment for his offenses in exchange for testifying against appellant. Defense counsel asked Brown how much prison time he was facing before the plea bargain. The prosecutor objected. The trial court sustained the objection and admonished the jury, "[Y]ou'll get instructions during the deliberations that you're not to consider punishment * * *. Do not allow any discussion regarding this Defendant's case in any way to affect anything about your deliberations for * * * [appellant's] case." Despite the trial court's ruling, defense counsel asked Brown if a detective or his attorney told him how much prison time he was originally facing, and Brown said no. Defense counsel asked Brown if a detective told him he was originally facing 53 years' imprisonment. The prosecutor objected, and the trial court sustained the objection. After the parties discussed the matter further, the trial court indicated that it would allow defense counsel to ask Brown again if a detective told him how much prison time he was originally facing, but the court instructed the jury that what a detective may have said does not mean that Brown was, in fact, facing that amount of prison time. Defense counsel did not ask his question again. Instead, defense counsel elicited testimony from Brown, without objection, indicating that, pursuant to his plea bargain, he received a "reduction in [his] sentence" after being charged with multiple offenses, including aggravated robberies, aggravated burglaries, and kidnappings.

Detective Brian Boesch testified that Raven and Raheem gave him the photograph identified by Paris. Raheem told him that two of the home-invasion perpetrators were in the photograph. Boesch showed the photograph to appellant, who admitted to being one of the boys in the photograph. Boesch arrested appellant based on that admission.

On cross-examination, Boesch said that he was shown the photograph on the evening of the home invasion, and he obtained a copy by e-mail that night or the following evening. He also testified that Paris had seen the photograph on the computer at her house.

At the close of the prosecution's case-in-chief, the trial court admitted the photograph into evidence without objection from defense counsel. Next, the trial court granted the defense's Crim.R. 29 motion for acquittal on the two aggravated-robbery and four robbery charges pertaining to Rhea and Raven.

Jeff Dybdahl, appellant's soccer coach, testified as follows for the defense. Dybdahl conducted soccer practice on Sundays from 4:00 to 5:30 or 6:00 p.m. He regularly brought appellant to practice and took him home afterward. He could not remember, however, whether appellant was at practice on Sunday, October 12, 2008. He said, "[I]f things were as they usually were, I gave [appellant] a ride" to and from practice. He acknowledged that appellant has missed practice, but only if he was out of town.

Appellant's brother, Alieu Sidibeh, testified that appellant had an 11:00 p.m. curfew on Sundays. Alieu said he did not remember whether he was with appellant during the evening of October 12, 2008. Defense counsel asked whether appellant ever missed curfew, and Alieu said no. At this point, the prosecutor objected. While discussing the objection with the parties, the trial court indicated that Alieu was not providing a valid alibi because he could not remember whether he was with appellant the evening of the home invasion. Defense counsel said that he was asking about appellant's history of complying with his curfew to "establish * * * memory, time." The trial court decided that defense counsel's questions were proper, but it instructed the jury that "[t]he witness is testifying somewhat that he behaved in a certain way all the time and that his brother behaved in a certain way all the time, you may not accept it for that at all * * *. The only purpose this line of questioning has is testing this witness' memory." Alieu provided no additional testimony after that instruction.

Next, the prosecutor objected to appellant calling his mother to testify because defense counsel did not include her on the list of alibi witnesses and because she was in the courtroom during part of the trial. Defense counsel contended that appellant's mother would provide beneficial testimony for appellant, noting that she "was going to say that she was home [on October 12, 2008] and her kids [were] home." Defense counsel said that appellant's mother was inadvertently left off the witness list, and he argued that it was irrelevant that she was present during part of the trial because there was no order for a separation of witnesses. The trial court ruled that appellant's mother would be allowed to testify, but not for purposes of providing an alibi. Defense counsel decided not to have appellant's mother testify at all, however.

Appellant testified on his own behalf. He denied participating in the October 12, 2008 home invasion. He said that he was at soccer practice that day. He did not mention where he was that evening, but he claimed that he was not with Vann or Brown. He said that he was not in a gang and that he was not displaying a gang sign in the photograph admitted by the state.

5

On cross-examination, appellant acknowledged that he was wearing a blue bandana in the photograph and that blue is associated with a local gang. He also testified that he invited Brown to live in his home, and he knew that Brown was in a gang. According to appellant, he and Brown lived together for only two months and not in October 2008.

Lastly, defense counsel moved to admit into evidence the written plea agreements of Vann and Brown. Defense counsel wanted to use the exhibits because they would inform the jury about the sentences Vann and Brown faced before they entered into their plea bargains. The trial court ruled that the exhibits were inadmissible but said that it would allow a stipulation as to the maximum sentences Vann and Brown faced after entering into the plea bargains. Defense counsel rejected that offer, however, and objected to not being allowed to provide evidence on the sentences Vann and Brown faced before they entered into their plea bargains.

During closing argument, the prosecutor noted that although appellant claimed he was not in a gang, he was displaying a gang sign and wearing a color associated with a gang in the photograph. The prosecutor also mentioned that appellant invited Brown, a gang member, into his home. The prosecutor said, however, "Now, this whole gang thing, no, this wasn't gang related. And the State of Ohio didn't give you that information to try to do what are called a bad guy argument. We didn't ask you to piggyback the gang argument and then prove that he's a robber and burglar. We showed you that to question his credibility * * *. That's all you are to consider it for."

Defense counsel asserted during closing argument that Paris was not credible when she identified appellant as a participant in the home invasion. He suggested that the identification was based on her seeing appellant in the photograph.

During deliberations, the jury asked whether the plea bargains of Vann and Brown would be revoked if they committed perjury. The trial court responded, "You have received all the evidence that you will hear regarding this case." Afterward, the jury found appellant guilty of all charges and specifications remaining after the trial court's ruling on appellant's Crim.R. 29 motion. The trial court sentenced appellant to 18 years' imprisonment. It merged the robbery offenses into the other counts, and it merged the firearm specifications. But it concluded that the aggravated-robbery and kidnapping offenses pertaining to Paris and Raheem did not merge.

Appellant appeals, raising the following assignments of error:

[I.] The trial court erred when it refused to permit the defendant to present evidence of his alibi.

[II.] The trial court erred when it gave a limiting instruction striking important defense habit and routine practice testimony.

[III.] The trial court erred when it permitted the reading of a transcript of former testimony under Evid.R. 804(B)(1) without satisfying either the right of confrontation or the requirement for indicia of reliability.

[IV.] The trial court erred when it permitted the admission of a photograph to show the defendant to be a gang member, permitted testimony that the defendant was a gang member, and permitted the state to argue in closing that the defendant was a gang member, even though the state conceded the crimes were not gang-related; there was no "gang" specification in the indictment; an[V.] The trial court erred when it denied the defendant's motion for a mistrial after the state's use of a photo array that had not been disclosed in discovery.

[VI.] The trial court erred by limiting cross-examination of testifying co-defendants, and providing an erroneous and damaging jury instruction regarding the use the jury could make of plea bargains the co-defendants struck in return for their testimony against defendant-appellant.

[VII.] The trial court erred when it sentenced the defendant to separate and consecutive terms of imprisonment upon aggravated robbery and kidnapping counts that constitute allied offenses of similar import and violate the prohibitions against double jeopardy.

[VIII.] Defendant-appellant did not receive the effective assistance of counsel.

7

[IX.] The cumulative nature of the errors in the first eight assignments of error deprived defendant-appellant of a fair trial.

*State v. Sidibeh*, 192 Ohio App.3d 256, 261-265 (Ohio App. 10th Dist. 2011).  On February 17, 2011, the appellate court sustained Petitioner's seventh assignment of error, concluding that the trial court erred by not merging the kidnapping and aggravated robbery offenses for sentencing purposes, overruled in part claim eight, finding the remainder of that claim moot, and thus reversed in part and affirmed in part the judgment of the Franklin County Court of Common Pleas, remanding the case to the trial court for re-sentencing.  *Id.*   On June 22, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Sidibeh*, 128 Ohio St.3d 1558 (2011).

At the July 27, 2011 resentencing, the trial court imposed the same sentence that it had previously imposed.  Petitioner apparently did not file an appeal.

On October 5, 2011, Petitioner filed a petition for post conviction relief in the state trial court, asserting the denial of the effective assistance of counsel and a fair trial due to inadequate investigation by the police and prosecution.  *Exhibit 15 to Motion to Dismiss*.  On October 26, 2011, Petitioner filed a motion for leave to file a motion for a new trial.  *Exhibits 16, 17 to Motion to Dismiss.*  On May 11, 2011, the trial court denied Petitioner's post conviction petition as untimely, but granted his motion for leave to file a motion for a new trial.  *Exhibit 19 to Motion to Dismiss*.   Petitioner timely appealed the trial court's denial of his post conviction petition.  *Exhibit 23 to Motion to Dismiss*.  That appeal apparently remains pending.

Through counsel, Petitioner filed a motion for a new trial in which he again asserted the denial of the effective assistance of counsel.  Petitioner specifically based that claim on his

8

attorney's alleged failure to present an alibi defense, failure to investigate, failure to permit Petitioner to testify regarding his whereabouts or to prepare Petitioner to testify on his own behalf, failure to present evidence regarding Petitioner's habit and routine, failure to contradict prosecution claims that Petitioner was a gang member and had been expelled from high school, and failure to investigate "Naron." *Exhibit 21 to Motion to Dismiss.* That motion for a new trial also apparently remains pending in the state trial court.

On June 22, 2012, through counsel, Petitioner filed the *Petition* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1. Petitioner's counsel was ineffective for failing to present alibi evidence of which he was apparently aware (*in record*), causing substantial prejudice to Petitioner.

*2.* Petitioner's counsel was ineffective because he failed to fully and properly investigate abundant alibi evidence that was readily available to him, and therefore could not present it at trial or even evaluate its worth as evidence, all to the prejudice of Petitioner. (*dehors record).*

3. Petitioner's counsel was ineffective because he did not prepare Petitioner to testify to his alibi defense, therefore depriving him not only of effective representation but of the constitutional right to testify in his own defense at the jury trial of his case, and of his constitutional right to present a defense, all of which inured to his prejudice.

4. Petitioner's counsel was ineffective because he failed to investigate and present evidence of Petitioner's good character and good reputation for veracity.

5. Petitioner's counsel was ineffective because he failed to investigate and present evidence to contradict prosecution claims that Mr. Sidibeh was in a gang and/or lied about being in a gang, that he had been expelled from high school, and that he was even with the two co-defendants on the night of the crimes, which is demonstrated by the record of exhibit affidavits (*dehors record*); and for failing to object to the prosecution's use of gang allegations.

6. Petitioner's counsel was ineffective for failing to investigate "Naron," the man who the two co-defendants said put them up to the crimes, and who looks remarkably like Mr. Sidibeh (see attachments to *Exhibit B*).

7. The actions of the government have violated Petitioner's constitutional right to due process of law by virtue of its failure to investigate an obvious lead which would have led to the discovery of highly exculpatory information from and about Naron Williams and at least one other witness.

8. Petitioner was completely prevented by his attorney's mistakes from asserting an alibi defense far more worthy than most; from showing abundant evidence of habit and routine practice proof that would have shown compliance with curfew, thereby increasing the credibility of the alibi evidence; from showing most worthy character evidence in support of Mr. Sidibeh's credibility; and from showing another viable suspect who is known to one of the co-defendants (who lies about it), an active participant in the crimes no matter how things are sliced and diced, who was never sought by police, who was mentioned, under oath and questioning from the state, and who looks like Petitioner.

It is the position of the Respondent that this action must be dismissed without prejudice as unexhausted. Petitioner acknowledges that claims two through eight of his habeas corpus petition remain unexhausted, but contends that claim one is exhausted and properly before the Court. Petitioner therefore seeks a stay of proceedings so that the statute of limitations will not foreclose any re-filing of his otherwise unexhausted habeas corpus claims. *See Response in Opposition*, Doc. No. 13.

## EXHAUSTION

Before a federal habeas court may grant relief, a state prisoner must exhaust his available state court remedies. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts,* 993 F.2d 124, 126 (1993). *See also* 28 U.S.C. § 2254(d)(1). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. 2254 (b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

Ordinarily, a habeas corpus case that presents even one unexhausted claim must be dismissed. *Rose v. Lundy*, 455 U.S. 509 (1982). Such a dismissal is without prejudice to the re-filing of the action once all claims have been exhausted. However, recognizing that the statute of limitations may preclude such re-filing, the United States Supreme Court has held that a federal court may stay an action presenting both exhausted and unexhausted claims for relief pending exhaustion of all claims where the petitioner can establish both good cause for failing to exhaust and a potentially meritorious claim. *Rhines v. Weber*, 544 U.S. 269 (2005).

The parties agree that at least some of Petitioner's claims are unexhausted. Although the one-year statute of limitations for asserting habeas corpus claims, *see* 28 U.S.C. § 2244(d)(1), could bar Petitioner from re-asserting, upon exhaustion, habeas corpus claims that are currently unexhausted, the Court nevertheless concludes that a stay of proceedings pending exhaustion is unwarranted because Petitioner has not exhausted any of the claims that he currently presents.

Petitioner insists that he has exhausted claim one, in which he alleges that he was denied the effective assistance of trial counsel because his attorney failed to present an alibi defense "of

which he was apparently aware (in record)." *Petition,* PageID #6; *Response in Opposition*, PageID #487-88.  Petitioner did not, however, raise this claim on direct appeal.  Moreover, he raises this precise issue in his motion for a new trial which, as noted *supra*, currently remains pending before the trial court.  *See Exhibit 21 to Motion to Dismiss.*  The Court therefore concludes that the *Petition* is wholly unexhausted.

Because this action present only unexhausted claims, a stay of proceedings under *Rhines* is not appropriate.  *See Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006);  *United States v. Hickman,* 191 Fed. Appx. 756, 757 (10th Cir. 2006);  *Mimms v. Russell*, 2009 WL 890509 (S.D. Ohio March 31, 2009).

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 6, be **GRANTED**, and that this action be **DISMISSED** without prejudice as unexhausted.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

   *s/  Norah McCann King*

Norah McCann King

United States Magistrate Judge

December 17, 2012